MARQUETTE APPLIANCES, INC. v. ECONOMY
FOOD PLAN, INC.
LEN DAMMAN, d.b.a. LEN'S TRUCKING
COMPANY, GARNISHEE.
JOSEPH STEIN AND OTHERS, INTERVENORS.

97 N. W. (2d) 652.

July 3, 1959—No. 37,695.

*Harold Shear* and *Thomas J. Rooney,* for appellants.
*Eugene A. O'Brien,* for plaintiff respondent.

MATSON, JUSTICE.

In a garnishment proceeding intervenors appeal from a judgment holding freezers stored in garnishee's warehouse to be subject to garnishment. This judgment was based on the theory that whatever property right intervenors have in the freezers is held by them as constructive trustees for the defendant and its creditors.

In the main action, which has not yet been tried, plaintiff, Marquette Appliances, Inc., a general creditor of the defendant, demands judgment on defendant's promissory note of $11,736.03. Defendant, Economy Food Plan, Inc., a corporation—herein called Economy—is engaged in the business of selling domestic freezers to individual consumers and as part of the sale plan frozen food is sold to the freezer purchasers at their option. The freezers sold to consumers were initially purchased by defendant from the plaintiff. Intervenors are the sole stockholders, directors, and officers of defendant corporation, Economy.

The 27 freezers here held in storage by the garnishee were sold by Economy to customers on conditional sales contracts. Economy then sold and assigned each of the contracts, and the property described therein, to the Industrial Credit Company. In consideration of the assignment, Economy received from Industrial the purchase price of the freezers minus the profit and a service charge.

As part of the financing arrangement, Economy, by a written instrument separate from the assignment, agreed with Industrial to repurchase any freezers which the latter repossessed from Economy's customers. Intervenors also became parties to such agreement by individually agreeing to be liable for a repurchase of repossessed freezers.

In turn, plaintiff Marquette Appliances, Inc., agreed that in the event Economy or intervenors failed to repurchase it would repurchase the freezer units.

Upon default of payments on the 27 freezers, Industrial repossessed them and notified plaintiff and Economy of their agreements to repurchase. Plaintiff refused to repurchase the freezers and Economy was financially unable to do so. Intervenors, three brothers who were the sole shareholders, directors, and officers of Economy, personally as individuals, paid the price outstanding of $11,000 on December 10, 1957, and repurchased the sales contracts and freezers. Prior to this payment, Industrial Credit had placed the freezers in the warehouse of Len's Trucking Company, the garnishee in this action. The space in the warehouse was apparently rented by intervenors although for five years prior space had been rented by Economy.

Following the payment by intervenors the contracts on the freezers were assigned by Industrial Credit to intervenors *individually* on the written authorization of one of the intervenors acting in his capacity as president of Economy.

On January 7, 1958, plaintiff brought the main action against Economy and on the same day served a garnishment summons on Len's Trucking Company. The garnishee's disclosure indicated that he possessed 27 freezers but that he was not certain as to their ownership. Intervenors served a complaint in intervention on February 10, 1958. The lower court allowed intervention and granted intervenors' motion to try separately from the main action all issues between the intervenors and the other parties. At the close of this action the court found that Industrial Credit had a *lien* interest in the freezers (rather than title) and entered conclusions of law that intervenors were constructive trustees of the freezers for Economy and its creditors and that the garnishment be sustained. Judgment was entered pursuant thereto and intervenors appeal from the judgment.

■ Were the freezers subject to garnishment on the theory that intervenors are constructive trustees of a property right in the freezers for the benefit of defendant corporation and its stockholders? Intervenors can be held constructive trustees only if they have acquired some property right in the freezers which they are under an equitable

duty to convey to the defendant corporation on the ground that they would be unjustly enriched if they were permitted to retain it. Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.[1] Apparently the trial court concluded that Economy at all times retained a property right in the freezers on the theory that the Industrial Credit Company, by taking an assignment of the conditional sales contracts and obtaining an agreement of repurchase, acquired only a lien interest. It becomes necessary therefore to consider what title or interest in the freezers was acquired by Industrial and what interest it in turn assigned to the intervenors, and whether the interest so ultimately acquired by intervenors justly belongs to defendant corporation and its creditors. If the interest acquired by intervenors justly belongs to the defendant, then the intervenors would be unjustly enriched if they were permitted to retain it and a constructive trust arises, but not otherwise.

When defendant corporation, Economy, initially sold a freezer on a conditional sales contract to an individual buyer, it, as seller, retained under the contract not a lien but a reservation of title.[2] This is in accord with the generally accepted rule that:

"* * * A conditional sale * * * is an executory contract of sale by the terms of which the right of possession vests in the vendee, but the title remains in the vendor until the fulfilment of a condition, generally the payment of the purchase price, imposed upon the vendee, when the title ipso facto passes to the vendee by virtue of the original agreement." 47 Am. Jur., Sales, § 828.[3]

---

[1]For the elements of a constructive trust as an equitable remedy for rectifying an unjust enrichment, see Knox v. Knox, 222 Minn. 477, 25 N. W. (2d) 225.

[2]Yellow Mfg. Acceptance Corp. v. Handler, 249 Minn. 539, 83 N. W. (2d) 103; C. I. T. Corp. v. Cords, 198 Minn. 337, 344, 269 N. W. 825, 829; Holmes v. Schnedler, 176 Minn. 483, 223 N. W. 908. The Holmes case was later overruled in part by Midland Loan Finance Co. v. Osterberg, 201 Minn. 210, 275 N. W. 681, 113 A. L. R. 649, on another issue. See, 16 Minn. L. Rev. 689.

[3]Annotations, 17 A. L. R. 1421, 43 A. L. R. 1248, and 92 A. L. R. 305.

Simultaneously with, or immediately after the making of the conditional sales contract, and of course before any default in payments or repossession had occurred, Economy unconditionally assigned its entire interest in the contract, and in the freezer therein described, to the Industrial Credit Company. An unconditional or absolute assignment operates generally to transfer to, and vest in, the assignee all rights and duties possessed by the assignor, with the result that the assignee thenceforth stands in the shoes of the assignor,[4] and this general rule is applicable to the assignment by the seller of its interest in a conditional sales contract. In Spoon v. Frambach, 83 Minn. 301, 304, 86 N. W. 106, 107, we stated:

"* * * The assignment transferred the payee's [seller] title to the property to the defendant with all the rights and remedies of the payee stipulated for in the note."[5]

It follows that Economy, by its unconditional assignment of the sales contract, conveyed to Industrial absolutely its reserved title[6] and retained for itself no interest in the freezers.

■ Did, however, Economy's agreement to repurchase repossessed freezers convert Industrial Credit Company's assignee status from that of an owner of a reserved title to that of a mere possessor of a lien upon the freezers? An unconditional assignment of the seller's interest in a sales contract is an absolute sale of the assignor's title and, like a bill of sale[7] or any similar instrument absolute on its face, may, if intended in fact to operate only as security for the payment of money advanced with a right of redemption in the assignor, be construed as a chattel mortgage which in effect gives only a lien right on the property.[8] The chief criterion for determining whether in a particular case an unconditional assignment constitutes in fact an absolute sale of the

---

[4] 4 Am. Jur., Assignments, § 95; 2 Dunnell, Dig. (3 ed.) §§ 571, 572.

[5] Other cases concerning assignments of conditional sales contracts indicate nothing to the contrary. See, Midland Loan Finance Co. v. Lorentz, 209 Minn. 278, 296 N. W. 911; Kavli v. Leifman, 207 Minn. 549, 292 N. W. 210; Hafiz v. Midland Loan Finance Co. 206 Minn. 76, 287 N. W. 677.

[6] See, 16 Minn. L. Rev. 689.

[7] See, Armstrong v. Freimuth, 78 Minn. 94, 80 N. W. 862.

[8] See, 3 Dunnell, Dig. (3 ed.) §§ 1424, 1425.

assignor's interest, or only a security device with a reservation of title and right of redemption in the assignor, is the intent of the parties as revealed by all the surrounding facts and circumstances. Here, despite the assignor's agreement to repurchase the freezers in the event of default, the facts clearly show that the assignment was absolute and not given merely for security purposes. There was no retention of possession of the sales contracts by Economy. It did not have or retain any right of possession of the freezers. Economy clearly had no desire to redeem its former right of ownership or interest in the sales contracts or in the freezers by the exercise of any right of repurchase. In fact, instead of enjoying a contractual *right* of repurchase at its option, it was subject to an *obligation* or *liability* of repurchase which came into existence only if the assignee repossessed the freezers for default in payments.[9]

We can only conclude that the agreement to repurchase was a separate and enforceable contract to perform an independent act which Economy offered to the Industrial Credit Company as an additional consideration[10] to induce it to purchase and take an assignment of the conditional sales contracts and that it was not an agreement which operated to leave title in Economy and give the assignee only a lien interest in the freezers. Similarly, in Midland Loan Finance Co. v. Madsen, 217 Minn. 267, 14 N. W. (2d) 475, a repurchase agreement was treated as a separately enforceable contract and not as a transaction whereby the assignor retained title while the assignee held only a security interest.

Taking the assignment and repurchase transactions as a whole, the Industrial Credit Company acquired thereby not a mere lien but an absolute and unqualified conveyance to it of Economy's entire interest in the conditional sales contracts and the freezers therein described, and no title, interest, or right of redemption whatever remained in defendant corporation. It further follows that the purchase of the sales

---

[9]As to sales with the right of repurchase, see 46 Am. Jur., Sales, § 514.

[10]See, Commercial Credit Co. v. Sample, 178 Ark. 1199, 13 S. W. (2d) 593, 594, 65 A. L. R. 781, 782; Pacific Finance Corp. v. Burkhart, 56 Ariz. 383, 391, 108 P. (2d) 380, 383.

contracts by the intervenors and the assignment by Industrial Credit Company of said contracts to intervenors vested in them individually the entire title to the contracts and the freezers, and the intervenors thereby acquired no property owned by Economy, the defendant corporation.

A careful consideration of the sketchy evidence presented by the record herein reveals no basis for imposing a constructive trust upon the intervenors in favor of the defendant corporation and its creditors. The uncontradicted testimony is that defendant corporation was financially unable to repurchase the freezers in its own behalf. Plaintiff, as a general creditor, refused to exercise its right of repurchase, although it had the opportunity to do so. Intervenors, in using their own personal funds to carry out their individual obligation to repurchase the freezers, were under no equitable duty to surrender the proceeds of their repurchase to defendant corporation. There is no evidence that they in any manner used corporate funds or that they unfairly took advantage of their relation to the corporation as its sole stockholders, officers, and directors.

The judgment of the trial court is reversed.

Reversed.