OPINION OF THE COURT
Chief Judge Breitel.
Plaintiff Mary Simonds, decedent’s first wife, seeks to impress a constructive trust on proceeds of insurance policies on decedent’s life. The proceeds had been paid to the named beneficiaries, defendants Reva Simonds, decedent’s second wife, and their daughter Gayle. Plaintiff, however, asserts as superior an equitable interest arising out of a provision in her separation agreement with decedent. Special Term granted partial summary judgment to plaintiff and impressed a con *237 structive trust to the extent of $7,000 plus interest against proceeds of a policy naming the second wife as beneficiary, and the Appellate Division affirmed.* Defendant Reva Simonds, the second wife, appeals.
The separation agreement required the husband to maintain in effect, with the wife as beneficiary to the extent of $7,000, existing life insurance policies or, if the policies were to be canceled or to lapse, insurance policies of equal value. The issue is whether that provision entitles the first wife to impress a constructive trust on proceeds of insurance policies subsequently issued, despite the husband’s failure to name her as the beneficiary on any substitute policies once the original life insurance policies had lapsed.
There should be an affirmance. The separation agreement vested in the first wife an equitable right in the then existing policies. Decedent’s substitution of policies could not deprive the first wife of her equitable interest, which was then transferred to the new policies. Since the proceeds of the substituted policies have been paid to decedent’s second wife, whose interest in the policies is subordinate to plaintiff’s, a constructive trust may be imposed.
On March 9, 1960, decedent Frederick Simonds and his wife of 14 years, plaintiff Mary Simonds, entered into a separation agreement which, on March 31, 1960, was incorporated into an Illinois divorce decree granted to plaintiff on grounds of desertion. The agreement provided, somewhat inartfully: "The husband agrees that he will keep all of the policies of Insurance now in full force and effect on his life. Said policies now being in the sum of $21,000.00 and the Husband further agrees that the Wife shall be the beneficiary of said policies in an amount not less than $7,000.00 and the Husband further agrees that he shall pay any and all premiums necessary to maintain such policies of Insurance and if for any reason any of them now existing the policies shall be cancelled or be caused to lapse. He shall procure additional insurance in an amount equal to the face value of the policies having been cancelled or caused to lapse.” Thus, the husband was to maintain, somehow, at least $7,000 of life insurance for the benefit of his first wife as a named beneficiary.
On May 26, 1960, less than two months after the divorce, *238 decedent husband married defendant Reva Simonds. Defendant Gayle Simonds was born to the couple shortly thereafter.
Sometime after the separation agreement was signed, the then existing insurance policies were apparently canceled or permitted to lapse. It does not appear from the record why, how, or when this happened, but the policies were not extant at the time of decedent husband’s death on August 1, 1971. In the interim, however, decedent has acquired three other life insurance policies, totaling over $55,000, none of which named plaintiff as a beneficiary. At his death, decedent had one policy in the amount of $16,138.83 originally issued in 1962 by Metropolitan Life Insurance Company, a second policy for $34,000 issued in 1967 through decedent’s employer by Travelers Insurance Company, and a third policy for $5,566 issued in 1962 by the Equitable Life Assurance Society of Iowa. The first two policies named Reva Simonds, defendant’s second wife, as beneficiary, and the third policy named their daughter. Hence, at the time of decedent’s death he had continuously violated the separation agreement by maintaining no life insurance naming the first wife as a beneficiary.
The first wife, on March 11, 1972, brought an action against the second wife for conversion of $7,000 and to recover $13,-600 in back alimony payments. This action was dismissed, essentially on the ground that the causes of action alleged could properly be brought only against decedent’s estate, not against the second wife. The estate, however, is insolvent.
Subsequently, the first wife brought this action against both the second wife and the daughter, seeking to impose a constructive trust on the insurance proceeds to the extent of $7,000. A second cause of action, dealing with alimony arrears, is not involved on this appeal. Special Term granted partial summary judgment to the first wife and imposed a constructive trust on the proceeds in the hands of the second wife. A unanimous Appellate Division affirmed in a thoughtful and scholarly opinion by Mr. Justice Richard D. Simons.
There is no question that decedent breached his obligation to maintain life insurance with his first wife as beneficiary. Consequently, the first wife would of course be entitled to maintain an action for breach against the estate. The estate’s insolvency, however, would make such an action fruitless. Thus, the controversy revolves around plantifFs right, in equity, to recover $7,000 of the insurance proceeds.
Born out of the extreme rigidity of the early common law, equity in its origins drew heavily on Roman law, where *239 equitable notions had long been accepted (see 1 Pomeroy, Equity Jurisprudence [5th ed], §§ 2-29). "Its great underlying principles, which are the constant sources, the never-failing roots, of its particular rules, are unquestionably principles of right, justice, and morality, so far as the same can become the elements of a positive human jurisprudence” (id., § 67, at p 90). Law without principle is not law; law without justice is of limited value. Since adherence to principles of "law” does not invariably produce justice, equity is necessary (Aristotle, Nichomachean Ethics, Book V, ch 9, pp 1019-1020 [McKeon, ed Oxford: Clarendon Press, 1941]). Equity arose to soften the impact of legal formalisms; to evolve formalisms narrowing the broad scope of equity is to defeat its essential purpose.
Whatever the legal rights between insurer and insured, the separation agreement vested in the first wife an equitable interest in the insurance policies then in force. An agreement for sufficient consideration, including a separation agreement, to maintain a claimant as a beneficiary of a life insurance policy vests in the claimant an equitable interest in the policies designated (Stronge v Knights of Pythias, 189 NY 346, esp at pp 351-352 [Hiscock, J.]; Salinas v Salinas, 187 Misc 509, 515 [Shientag, J.], affd 271 App div 917; see Ferro v Bologna, 31 NY2d 30, 35). This interest is superior to that of a named beneficiary who has given no consideration, notwithstanding policy provisions permitting the insured to change the designated beneficiary freely.
This is not to say that an insurance company may not rely on the insured’s designation of a beneficiary. None of this opinion bears on the rights or responsibilities of the insurer in law or in equity.
Obviously, the policies now at issue are not the same polices in existence at the time of the separation agreement. But it has been held that mere substitution of policies, or even substitution of insurance companies, does not defeat the equitable interest of one who has given sufficient consideration for a promise to be maintained as beneficiary under an insurance policy (see Locomotive Engrs. Mut. Life & Acc. Ins. Assn. v Locke, 251 App Div 146, 149 [Lewis, J.], affd 277 NY 584; see, also, Dixon v Dixon, 184 So 2d 478, 481 [Fla], cert den 194 So 2d 897). The persistence of the promisee’s equitable interest is all the more evident where the agreement expressly provides for a change in policies, and in effect provides further that the promisee’s right shall attach to the new policies.
*240 For a certainty, the first wife’s equitable interest would be easier to trace if the new policies were quid pro quo replacements for the original policies. The record does not reveal whether this was so. But inability to trace plaintiff's equitable rights precisely should not require that they not be recognized, much as in the instance of damages difficult to prove (cf., e.g., Randall-Smith v 43rd St. Estates Corp., 17 NY2d 99, 105-106). The separation agreement provides nexus between plaintiff’s rights and the later acquired policies. The later policies were expressly contemplated by the parties, and it was agreed that plaintiff would have an interest in them. No reason in equity appears for denying plaintiff that interest, so long as no one who has given value for the policies or otherwise suffered a detriment is involved. The second wife’s innocence does not offset the wrong by the now deceased husband.
The conclusion is an application of the general rule that equity regards as done that which should have been done (2 Pomeroy, Equity Jurisprudence [5th ed], § 364; see, e.g., Wallace v First Trust Co. of Albany, 251 App Div 253, 256). Thus, if an insured, upon lapse or cancellation of insurance, followed by replacement with new insurance, has a contractual obligation to designate a particular person as beneficiary, equity will consider the obligee as a beneficiary.
In this case, then, the first wife’s interest in the original policies extended as well to the later acquired policies. The husband, upon lapse or cancellation of the earlier policies, had by virtue of the separation agreement an obligation to name her as beneficiary on the later policies, an obligation enforceable in equity despite the husband’s failure to comply with the terms of the separation agreement. Due to the husband’s failure to do what he should have done, the first wife acquired not only a right at law to sue his estate for breach of contract, a right now worthless, but also an equitable right in the policies, a right which, upon the husband’s death, attached to the proceeds (cf. Salinas v Salinas, 187 Misc 509, 515, supra; MacDonald v Conservative Life Ins. Co., 292 Mich 182, 186-188).
And, since the first wife was entitled to $7,000 of the insurance proceeds at the time of the husband’s death, she is no less entitled because the proceeds have already been converted by being paid, erroneously, to the named beneficiaries (see Lengel v Lengel, 86 Misc 2d 460, 465-466; Richards v *241 Richards, 58 Wis 2d 290, 293-294; cf. Hundertmark v Hundertmark, 372 Pa 138, 145-146). Her remedy is imposition of a constructive trust.
In the words of Judge Cardozo, "[a] constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee” (Beatty v Guggenheim Exploration Co., 225 NY 380, 386). Thus, a constructive trust is an equitable remedy. It is perhaps more different from an express trust than it is similar (5 Scott, Trusts [3d ed], § 461). As put so well by Scott and restated at the Appellate Division, "[the constructive trustee] is not compelled to convey the property because he is a constructive trustee; it is because he can be compelled to convey it that he is a constructive trustee” (id., § 462, at p 3413).
More precise definitions of a constructive trust have been termed inadequate because of the failure to recognize the broad scope of constructive trust doctrine (id., at p 3412). As another leading scholar has said of constructive trusts, "[t]he Court does not restrict itself by describing all the specific forms of inequitable holding which will move it to grant relief, but rather reserves freedom to apply this remedy to whatever knavery human ingenuity can invent” (Bogert, Trusts and Trustees [2d ed rev, 1978], § 471, at p 29).
Four factors were posited in Sharp v Kosmalski (40 NY2d 119, 121). Although the factors are useful in many cases contructive trust doctrine is not rigidly limited. For a single example, one who wrongfully prevents a testator from executing a new will eliminating him as beneficiary will be held as a constructive trustee even in the absence of a confidential or fiduciary relation, a promise by the "trustee”, and a transfer in reliance by the testator (see, e.g., Latham v Father Divine, 299 NY 22, 26-27). As then Judge Desmond said in response to the argument that a breach of a promise to the testator was necessary for imposition of a constructive trust (at p 27), "[a] constructive trust will be erected whenever necessary to satisfy the demands of justice * * * [I]ts applicability is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them”.
It so happens, as an added argument, if it were necessary, *242 that the four factors enumerated in Sharp v Kosmalski are perceptible in this case: a promise, a transfer in reliance on the promise, the fiduciary relation between decedent and his first wife, and the "unjust enrichment” of the second wife. Because decedent and plaintiff were husband and wife, there is a duty of fairness in financial matters extending even past the contemplated separation of the spouses. Hence, a separation agreement based on one party’s misrepresentation of financial condition is voidable (see Riemer v Riemer, 31 AD2d 482, 485, and cases cited affid 31 NY2d 881). A similar rule applies in Illinois, where the instant separation agreement was made (see Bellow v Bellow, 40 Ill App 3d 442, 445-446; cf. Lagen v Lagen, 14 Ill App 3d 74, 79-80; Garmisa v Garmisa, 4 Ill App 3d 411, esp at pp 422-424). Thus, at the time of the separation agreement decedent and plaintiff remained in a confidential or fiduciary relationship.
It is agreed that the purpose of the constructive trust is prevention of unjust enrichment (Sharp v Kosmalski, 40 NY2d 119, 123, supra; Restatement, Restitution, § 160; 5 Scott, Trusts [3d ed], § 462.2).
Unjust enrichment, however, does not require the performance of any wrongful act by the one enriched (Lengel v Lengel, 86 Misc 2d 460, 465-466; supra; Richards v Richards, 58 Wis 2d 290, 293-294, supra; see, generally, 5 Scott, Trusts [3d ed], § 462.2). Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property "under such circumstances that in equity and good conscience he ought not to retain it” (Miller v Schloss, 218 NY 400, 407; see Sharp v Kosmalski, 40 NY2d 119, 123, supra; Sinclair v Purdy, 235 NY 245, 253-254). A bona fide purchaser of property upon which a constructive trust would otherwise be imposed takes free of the constructive trust, but a gratuitous donee, however innocent, does not (see 5 Scott, Trusts [3d ed], §§ 468, 474; Restatement, Restitution, § 172).
The unjust enrichment in this case is manifest. At a time when decedent was, certainly, anxious to remarry, he entered into a separation agreement with his wife of 14 years. As part of the agreement, he promised to maintain $7,000 in life insurance with the first wife as beneficiary. Later he broke his promise, and died with insurance policies naming only the second wife and daughter as beneficiaries. They have collected the proceeds, amounting to more than $55,000, while the first *243 wife has collected nothing. Had the husband kept his promise, the beneficiaries would have collectd $7,000 less in proceeds. To that extent, the beneficiaries have been unjustly enriched, and the proceeds should be subjected to a constructive trust.
Moreover, the second wife’s complaint, if that it be, over the distinction drawn below between her daughter and herself is to no avail. The first wife’s equitable interest attached to all the substituted insurance policies, whether they named the second wife or the daughter as beneficiary. At the time each substituted policy was issued, decedent had an obligation to make the first wife a beneficiary. None of the named beneficiaries can escape the superior equitable interest of the first wife by pointing to other policies. True, plaintiff might also be entitled to impose a constructive trust on the policy naming the daughter as beneficiary. But that provides no cause for prorating the constructive trust. The beneficiaries are jointly and severally liable, if the analogy applicable to express trusts be applied (3 Scott, Trusts [3d ed], §§ 258-258.3). Plaintiff’s choice not to appeal the dismissal against the daughter should not bar her from collecting in full against the second wife, who may have a right of contribution against the daughter, a question not before the court and not passed on (cf. id.).
The issues in this case should not generate significant controversy. The action is in equity, and the equities are clear. True, some courts have decided the issues differently (Rindels v Prudential Life Ins. Co. of Amer., 83 NM 181; Lock v Lock, 8 Ariz App 138, 143; see, also, Larson v Larson, 226 Ga 209, 211). Those cases, however, rely heavily on formalisms and too little on basic equitable principles, long established in Anglo-American law and in this State and especially relevant when family transactions are involved. "A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief’ (Beatty v Guggenheim Exploration Co., 225 NY 380, 389 [Cardozo, J.], supra).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

Special Term dismissed the cause of action against defendant Gayle Simonds. No appeal of that dismissal was taken to the Appellate Division.