Robert J. ROCK, et al., Respondents,

v.

**HENNEPIN BROADCASTING ASSOCIATES, INC., et al.,**
**Appellants.**

No. C7–84–1171.

Court of Appeals of Minnesota.

Dec. 31, 1984.

David P. Pearson, Winthrop, Weinstine & Sexton, St. Paul, for respondents.

Robert S. Brill, Doherty, Rumble & Butler, Minneapolis, for appellants.

Heard, considered and decided by LANSING, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

Appellants Hennepin Broadcasting Associates, Inc. (Hennepin Broadcasting), and Albert S. Tedesco appeal from the trial court's order imposing, during the pendency of a lawsuit, a constructive trust on the proceeds of sale of stock or assets of Hennepin Broadcasting. We reverse the order imposing the constructive trust.

## FACTS

Hennepin Broadcasting is a closely held Minnesota corporation that until recently owned and operated KTCR, a local AM/FM radio station. Albert S. Tedesco is the president and majority shareholder of Hennepin Broadcasting. He recently sold its assets to John T. Parker and Kathleen Parker.

Respondent Robert J. Rock was employed by Hennepin Broadcasting from January 1965 until June 1983. He was vice president of Hennepin Broadcasting and a general manager of the radio station during that time, with considerable responsibility for the general business, marketing, programming, and financial aspects of the enterprise.

Rock apparently suffered from serious health problems during many of the years he was employed by Hennepin Broadcasting and in 1974 underwent back surgery and open-heart surgery. Rock contends that the stress and tension of his job, along with his health problems, led to his decision in 1974 to resign. He claims that Tedesco and Hennepin Broadcasting entered into a contract with him to induce him to stay and to reward him for past services, under which Rock was to receive a specified percentage of the proceeds of the sale of assets or stock of Hennepin Broadcasting or KTCR in the event the entities were sold. The payments were to be due at the closing of the sale. The contract was drafted by an attorney who at the time represented Tedesco and Hennepin Broadcasting and was signed by the parties.

In the spring of 1982 Tedesco began negotiations with John B. Parker and Kathleen Parker regarding the purchase of Hennepin Broadcasting. The negotiations apparently considered both the possibility of the Parkers purchasing the assets of Hennepin Broadcasting and of their becoming shareholders. By early 1984 the negotiations were completed, FCC approval had been obtained, and the transaction was finalized. The agreement provides that a corporation formed by the Parkers will pay about $3.4 million to Hennepin Broadcasting for its assets. In addition, Hennepin Broadcasting will receive $750,000 cash and a $2,650,000 promissory note, under which payments are due until 1990.

Rock and another Hennepin Broadcasting employee, Todd J. Garamella, worked for Hennepin Broadcasting until June 1983, when they claim they were involuntarily terminated. They sued Hennepin Broadcasting and Tedesco, seeking damages for breach of contract and numerous other causes of action. Rock claims he is entitled to a percentage of the sale proceeds under the 1974 contract. Tedesco contests the validity of the contract and denies that the contract was ever intended to induce Rock to continue working for the station. In addition, he accuses Rock of gross mismanagement and of misappropriating property from Hennepin Broadcasting.

Rock also asserts that he, Tedesco, and Hennepin Broadcasting agreed that the stock could not be sold or transferred to any other person or entity until Rock received the payments due him under the contract. Tedesco denies that any such agreement was ever made.

In May 1984 Rock made an interlocutory motion for imposition of a constructive trust or an equitable lien on Hennepin Broadcasting stock, assets, and the sale proceeds and asked that Hennepin Broadcasting be restrained during the pendency of the action from transferring or disposing of the sale proceeds. Without such a temporary measure, Rock claims, the proceeds may be transferred from Hennepin Broadcasting to Tedesco, and Rock would then be left without a meaningful remedy because "Tedesco has not been able to prudently manage his money, assets or financial affairs" and "has had a very serious problem with gambling." He would therefore "squander" the sale proceeds unless they are kept under court control.

The trial court denied Rock's motion for an equitable lien and for a temporary restraining order but ordered the imposition of a constructive trust. The order required Hennepin Broadcasting and Tedesco to deposit in a money market savings account the percentage of the sale claimed by Rock under the 1974 contract.

### ISSUES

1. Is an interlocutory order imposing a constructive trust an appealable order?

2. Was the trial court's imposition of a constructive trust appropriate?

### ANALYSIS

### I

Respondents contend that an interlocutory order imposing a constructive trust during the pendency of an action is not appealable. This type of order is not specifically listed in Minn.R.Civ.App.P. 103.03. However, Rule 103.03(g) provides that an appeal may be taken from "a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding." A special proceeding has been defined as:

> any civil remedy in a court of justice which is not of itself an ordinary action

and which, if incidental to an ordinary action, independently of the progress and course of procedure in such action, *terminates in an order which, to be appealable* [within the meaning of the rule] *must adjudicate a substantial right with decisive finality* separate and apart from any final judgment entered or to be entered in such action upon the merits. *Chapman v. Dorsey*, 230 Minn. 279, 283, 41 N.W.2d 438, 440–41 (1950) (emphasis added) (an order denying a motion for joinder of parties is not a special proceeding); *see also Beatty v. Winona Housing and Redevelopment Authority*, 277 Minn. 76, 79–80, 151 N.W.2d 584, 587 (1967) (declaratory judgment actions are not special proceedings). "Special proceeding" has been defined even more broadly as a "generic term" for civil remedies that are not ordinary actions. *Anderson v. Langula*, 180 Minn. 250, 251, 230 N.W. 645 (1930); *see also Schuster v. Schuster*, 84 Minn. 403, 407, 87 N.W. 1014, 1015 (1901) ("[w]here the law confers a right, and authorizes a special application to a court to enforce it, the proceeding is special, within the ordinary meaning of the term 'special proceeding.'").

Imposition of a constructive trust is a proceeding commenced independently of a pending action in order to obtain special relief. In this case, imposition of the trust effectively adjudicates a substantial right—Hennepin Broadcasting's right to freely use and manage during litigation the proceeds from the sale of its stock and assets. *Cf. Brown v. Muetzel*, 358 N.W.2d 725 at 727 (Minn.Ct.App.1984) (order appointing a receiver pendente lite is a final order affecting a substantial right made in a special proceeding, appealable under Minn.R.Civ.App.P. 103.03(g)). Therefore the order imposing the trust is appealable under Rule 103.03(g).

### II

Hennepin Broadcasting argues that the trial court's imposition of a constructive

trust pendente lite is not appropriate in this situation. Rock responds with the fundamental principle that a court acting in equity has broad latitude within which to fashion remedies to suit each particular case. *See, e.g., Beliveau v. Beliveau,* 217 Minn. 235, 245, 14 N.W.2d 360, 366 (1944).

Minnesota courts have specifically found the constructive trust to be a flexible remedy, appropriate "where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Knox v. Knox,* 222 Minn. 477, 482, 25 N.W.2d 225, 228 (1946) (quoting Restatement of Restitution § 160, at 640–41 (1937)).

▮ Minnesota courts have frequently found constructive trusts appropriate as post-trial remedies. This comports with notions of due process, which require, in judicial proceedings affecting property rights, notice and an opportunity to be heard. *See generally International State Bank v. Gamer,* 281 N.W.2d 855 (Minn.1979). These requirements are most fully met after submission of evidence and a trial on the merits. However, motion practice in Minnesota district courts provides for written notice to parties and a hearing before an order can be issued. *See* Minn.R.Civ.P. 7.02. Therefore, due process considerations do not necessarily preclude the use of a constructive trust as an interlocutory protective device.

In addition, the Minnesota Supreme Court has reviewed a trial court's imposition of a constructive trust in a prejudgment garnishment action. *See Marquette Appliances, Inc. v. Economy Food Plan, Inc.,* 256 Minn. 169, 97 N.W.2d 652 (1959). The *Marquette* court did not disapprove the interlocutory imposition of the trust but instead determined that the party in possession of the property had no equitable duty to convey it in order to prevent unjust enrichment. *See id.* at 175, 97 N.W.2d at 656.

▮ A constructive trust may be imposed only when there is some specific property identified as belonging, in equity and conscience, to the plaintiff. D. Dobbs, *Handbook on the Law of Remedies* § 4.3, at 242 (1973); *see also Wilcox v. Nelson,* 227 Minn. 545, 550, 35 N.W.2d 741, 744 (1949). A constructive trust does not arise unless there is property on which the trust can be fastened, and the property is held by the person to be charged as constructive trustee. Restatement of Restitution § 160, at 648. There must be "clear and convincing evidence that the imposition * * * is justified to prevent unjust enrichment." *In re Estate of Eriksen,* 337 N.W.2d 671, 674 (Minn.1983) (citing *Knox v. Knox,* 222 Minn. 477, 481, 25 N.W.2d 225, 228 (1946)).

The trial court based its imposition of the trust on the provisions of the parties' 1974 contract, under which Rock alleges he is entitled to a percentage of the sale proceeds. The court's memorandum says "Rock is entitled to his contractual benefits. To hold otherwise would unjustly enrich defendants [Hennepin Broadcasting and Tedesco] for their wrongful conduct in derogation of Rock's rights."

The record contains no testimony or depositions but does contain affidavits. These present sharply conflicting stories. Rock portrays himself as a loyal employee who had entered into a contract compensating him for past and continued hard work, long hours, and loyalty. Tedesco, in contrast, alleges instances of theft, gross mismanagement, and heavy operating losses. Rock relies completely on the existence and validity of the parties' 1974 contract and subsequent agreement that the stock and assets would not be sold or transferred until Rock received payment. Tedesco, equally forcefully, denies the validity of the 1974 contract and denies that the subsequent agreement was ever made. The parties disagree completely about the negotiations leading up to the asset sale to the Parkers and the reasons for the structure of the sale.

Allegations were made and denied of fraud and misrepresentation, tortious interference with contractual relations, wrongful termination of employment, breach of compensation contract, libel and slander, intentional infliction of emotional distress, and malicious prosecution. The effect and validity of the contract and the equities of the suit are intertwined with these unresolved causes of action. Furthermore, Tedesco and Hennepin Broadcasting now argue that the sale proceeds were used to pay other creditors, so they are unable to convey the proceeds as ordered. The sketchy and disputed evidence does not clearly and convincingly show that Hennepin Broadcasting and Tedesco are holding property to which Rock is equitably entitled in order to prevent unjust enrichment. Therefore, the record does not provide a basis for interlocutory imposition of a constructive trust on the proceeds of the sale.

In addition, even assuming the validity of Rock's contractual claim, he has not clearly shown that any prejudgment relief is necessary to prevent dissipation of the proceeds. Rock relies on allegations that Hennepin Broadcasting will transfer the proceeds to Tedesco and that Tedesco will "squander" them. The sale is structured, however, so that a substantial portion is in the form of a promissory note under which payments will be made until 1990. Should Rock successfully pursue his suit to a judgment, there is no indication that the note will not provide sufficient assets from which to satisfy the judgment.

## DECISION

The trial court's order imposing a constructive trust with respect to the proceeds of the sale of the assets of Hennepin Broadcasting is vacated.

Reversed.