**2017 UT App 26**

## THE UTAH COURT OF APPEALS

DIANE WELTY AND JACOB LOPEZ,
Petitioners,

*v.*

RETIREMENT BOARD,
PUBLIC EMPLOYEES' GROUP TERM LIFE PROGRAM,
Respondent.

Opinion
No. 20150746-CA
Filed February 9, 2017

Original Proceeding in this Court

Diana J. Huntsman, Steven M. Rogers, and Chelsey
Phippen, Attorneys for Petitioners

David B. Hansen, Liza J. Eves, and Erin L. Gill,
Attorneys for Respondent

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
STEPHEN L. ROTH and DAVID N. MORTENSEN concurred.

TOOMEY, Judge:

¶1 Diane Welty and Jacob Lopez (Petitioners) seek review of the Utah State Retirement Board and Public Employees' Group Term Life Program's decision denying their claim for payment of life insurance benefits under the Utah State Retirement and Insurance Benefit Act (the Act). We decline to disturb the Board's ruling.

### BACKGROUND

¶2 Welty and Jesse Lopez were married and had children, including Jacob Lopez, before they divorced in 1997. Their divorce decree provided:

That [Jesse Lopez] currently has in force and effect a life insurance policy on his life in the face amount of $325,000.00. That [Lopez] is ordered to maintain in full force and effect said life insurance policy until such time as the last of the parties' children reaches age 18 or alimony terminates, whichever is later. During the period that the child support is due, [Lopez] should be ordered to irrevocably designate [Welty], as trustee for the minor children, beneficiary on said life insurance policy. [Lopez] should be ordered to provide [Welty] with proof that the insurance is in effect within 30 days of entry of the Divorce Decree and provid[e] verification that said insurance is in effect by January 15th of each year thereafter.

¶3    Lopez was employed by Salt Lake City Corporation (the City) where he was covered by a group term life insurance policy offered to City employees through the Public Employees' Health Program (PEHP) Life Program.[1] Lopez had $173,000 in

_____

1. Title 49 of the Utah Code is the Utah State Retirement and Insurance Benefit Act. The Act's purpose is to establish retirement systems which provide benefits for members and "a central administrative office and a board to administer the various systems, plans and programs established by the . . . board." Utah Code Ann. § 49-11-103(1) (LexisNexis 2015). The Utah State Retirement Board is required to "ensure that the systems, plans, programs, and funds are administered according to law" and to "take action consistent with this title for the administration of the systems, plans, and programs in order to carry out the purposes of this title." *Id.* § 49-11-203(c), (n). Among the plans and programs is the Public Employees' Benefit and Insurance Program, which offers a number of employee benefit plans, including life insurance. *Id.* §§ 49-20-101, -102(3). The Public Employees' Benefit and Insurance Program

(continued…)

coverage with the Life Program, and in December 1999 he applied for additional coverage. The application named Welty as primary beneficiary for the minor children, and Lopez's current wife, Mary Ellen Lopez, as secondary beneficiary.[2] Lopez also signed and filed a Beneficiary Change Form (the 1999 Designation) that listed as primary beneficiary "Diane (petitioner) for minor children as per attached divorce decree," and Mary Ellen Lopez as secondary beneficiary. The divorce decree was attached to the 1999 Designation.

¶4     Between 2003 and 2006, Lopez signed and filed two more Beneficiary Change Forms that revoked previous nominations of beneficiaries and made new designations. Then in March 2006, Lopez signed and filed a Group Term Life/Accident Plan Beneficiary Change Form (the 2006 Designation) "[r]evoking any previous nominations or beneficiary(ies)" and designating Mary Ellen Lopez as primary beneficiary.

¶5     The Self-Funded and Administered Group Term Life and Accident Plan Master Policy (the Master Policy) "establishes the coverage and benefits available to Employees and their eligible Dependents." The Master Policy cannot be changed "unless

_____

(…continued)
administers these benefit plans. *Id.* § 49-20-103. Political subdivisions, such as Salt Lake City Corporation, are eligible to participate on behalf of their employees. *Id.* § 49-20-201(1)(b). The Act thus "provide[s] a mechanism for covered employers to provide covered individuals with group . . . life insurance . . . in the most efficient and economical manner." *Id.* § 49-20-105(1).

2. This request for additional coverage was cancelled "based upon contact from the City's Human Resources Department." So far as we can tell from the record, although he made another attempt, Lopez never secured additional coverage through the Life Program.

approved by the Plan and unless such approval is evidenced by endorsement or amendment." It provides for payment of benefits to designated beneficiaries. "A subscriber may change his or her beneficiary(ies) by filing a written notice of the change with the Plan. The change will take effect as of the date the subscriber signed the notice of change . . . ." Written notices of claim "must be given to the Plan within twenty (20) days after the death of a Subscriber . . . unless it was not reasonably possible to do so." The Master Policy provides that benefits "will be paid as soon as reasonably possible after receipt of an acceptable written proof of loss together with supporting materials," and "[a]ny payment made in good faith pursuant to this provision fully discharges the Plan to the extent of the payment." Further, "[n]o legal action may be brought after the expiration of three years after the time written proof of loss is required to be furnished."

¶6      Lopez died in July 2006, while his son, Jacob Lopez, was still a minor. Shortly after Lopez's death, Mary Ellen Lopez filed a Group Term Life Program Claimant's Statement, and PEHP paid her $173,000.

¶7      In August 2012, six years after Lopez's death, Petitioners submitted a notice of claim to the Life Program, disputing the distribution of Lopez's life insurance proceeds. PEHP's Life Claims Review Committee and the Executive Director each denied Petitioners' claim, and the Petitioners appealed, ultimately filing a Request for Board Action. An adjudicative hearing officer conducted a hearing and determined "[t]he procedure followed by [PEHP] was in accord with its master policy terms created by statutory framework. . . . [P]etitioners have not met their burden to [show] that there was error or a legal defect in [PEHP's] conduct." The Board adopted the hearing officer's ruling.

¶8      Petitioners now seek judicial review of the Board's final action.

ISSUE AND STANDARD OF REVIEW

¶9     Petitioners contend the hearing officer erred in his interpretation of the Utah Code "by denying [their] requests for payment of life insurance proceeds." "[W]e review the Board's application or interpretation of a statute as a question of law under the correction-of-error standard." *McLeod v. Retirement Board*, 2011 UT App 190, ¶ 9, 257 P.3d 1090 (alteration in original) (citation and internal quotation marks omitted); *see also* Utah Code Ann. § 63G-4-403(4)(d) (LexisNexis 2016) (stating that this court may grant relief if an agency has "erroneously interpreted or applied the law").

ANALYSIS

¶10     Petitioners argue that because a court ordered Lopez to irrevocably designate Welty as beneficiary of his life insurance coverage on behalf of the minor children, and because Lopez attached the divorce decree to his 1999 Designation thereby incorporating it into his contract with the Life Program, the Life Program "breached its contractual duties under the Master Policy by paying [Mary Ellen Lopez] pursuant to a forbidden change of beneficiary form." "Our analysis is rooted in the concept that an insurance policy is a contract between two parties." *Quaid v. U.S. Healthcare, Inc.*, 2007 UT 27, ¶ 10, 158 P.3d 525. In Petitioners' view, the divorce decree is part of the contract between Lopez and PEHP. They reason that the attachment of the divorce decree, as an incorporated document, rendered the 1999 Designation irrevocable, and thus that the 2006 Designation was invalid, in which case PEHP should not have paid Mary Ellen Lopez the proceeds of the life insurance policy.

¶11     Petitioners' argument fails for several reasons. First,

> [i]n order [f]or the terms of another document to be
> incorporated into the document executed by the

> parties, the reference must be clear and unequivocal, and must be called to the attention of the other party, [the party] must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.

*Interwest Constr. v. Palmer*, 886 P.2d 92, 97 n.8 (Utah Ct. App. 1994) (second and third alterations in original) (citation and internal quotation marks omitted). In this case, the 1999 Designation did not explicitly incorporate anything by reference into the Master Policy, and there is no evidence PEHP approved the incorporation of the divorce decree.

¶12 The 1999 Designation named, as primary beneficiary, "Diane (petitioner) for minor children as per attached divorce decree." Although this reference acknowledges the divorce decree, there is no language to indicate that the 1999 Designation was meant to incorporate the terms of the decree as part of the Master Policy. *See Layne Christensen Co. v. Bro-Tech Corp.*, 836 F. Supp. 2d 1203, 1236 (D. Kan. 2011) ("A mere reference in one agreement to another agreement, without more, does not incorporate the latter agreement into the former by reference. To incorporate one document into another, an explicit manifestation of intent is required." (citation and internal quotation marks omitted)); *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 411 (Ariz. Ct. App. 1983) ("A reference to a former paper for descriptive purposes . . . cannot have the effect of importing into a new contract the conditions and limitations of the former agreement." (citation and internal quotation marks omitted)).

¶13 In addition, incorporation also requires consent. *See Interwest Constr.*, 886 P.2d at 97 n.8. Here, there is no indication PEHP agreed to be bound by the provisions in the divorce decree. Petitioners argue that "PEHP's actions demonstrate that it consented to incorporation of the divorce decree by accepting the beneficiary change form along with the attached divorce

decree." But this is not sufficient. The Master Policy explicitly states, "No change in this Master Policy shall be valid unless approved by the Plan and unless such approval is evidenced by endorsement or amendment to this Master Policy." The Master Policy allows for an insured to make a change of beneficiary at any time. To incorporate the divorce decree with the effect of making the accompanying beneficiary designation irrevocable would modify this clause by forbidding a change in beneficiary. The Master Policy makes clear this modification is not valid absent an "endorsement or amendment" by PEHP. Petitioners have not demonstrated that PEHP consented to incorporate the divorce decree in the manner the Master Policy requires.

¶14 Second, the Act requires PEHP to pay the last-named beneficiary. The Act provides that "[t]he most recent beneficiary designations signed by the member and filed with the office . . . at the time of the member's death are binding in the payment of any benefits due under this title." Utah Code Ann. § 49-11-609(2) (LexisNexis Supp. 2016). In other words, under the Act's plain language, PEHP is required to pay any benefits owed to the deceased employee's most recently designated beneficiary. The Master Policy is consistent with this provision, requiring payment to a designated beneficiary and permitting a subscriber to change the designated beneficiary effective on the date the notice of change was signed.

¶15 Lopez was a City employee covered at the time of his death in July 2006 by a group term life insurance policy offered through PEHP. In March 2006, just months before his death, Lopez signed and submitted a Beneficiary Change Form "[r]evoking any previous nominations or beneficiary(ies)" and designating Mary Ellen Lopez as primary beneficiary. There being no subsequent change, Mary Ellen Lopez was the most recent beneficiary designated by Lopez. Soon after Lopez's death, Mary Ellen Lopez filed a claim, and PEHP paid it. The Act

required PEHP to do this, and so did the policy.[3] *See id.* § 49-11-609(2).

¶16 Having properly paid benefits to Mary Ellen Lopez, PEHP had no further obligation to pay again. "Benefits paid under this section shall be: (a) a full satisfaction and discharge of all claims for benefits under this title; and (b) payable by reason of the death of the decedent." *Id.* § 49-11-609(5).

¶17 Notwithstanding the Act's requirements, Petitioners contend that "[c]hanging an irrevocable beneficiary designation is forbidden under Utah law." In support, Petitioners rely on *Travelers Insurance Co. v. Lewis*, 531 P.2d 484 (Utah 1975). In *Travelers*, a divorce decree ordered the decedent to maintain a life insurance policy with his ex-wife as beneficiary and the minor children as contingent beneficiaries in the event the ex-wife remarried or died. *Id.* at 485. The decedent, "contrary to the order . . . , changed the beneficiary of the policy to be his second wife." *Id.* The second marriage failed and the first wife remarried. *Id.* Following the decedent's death, "a dispute arose between [the second wife] and the children as to whom the proceeds of the policy should be paid," and the insurance company filed an interpleader action to determine who was entitled to the proceeds. *Id.* The district court granted summary judgment for the children, and our supreme court affirmed, determining "that the provisions of a divorce decree control the disposition of the proceeds of an insurance policy between contending beneficiaries." *Id.* at 485–86. *Travelers*, then, does not

---

3. We note that our legislature could amend the Act to allow for irrevocable designations of beneficiaries under similar circumstances, in which a divorce decree requires a party to maintain life insurance to secure payment of child support during a child's minority or other obligations created by decree. This is a policy determination which belongs to the legislative branch.

address an insurer's responsibility to a previously designated beneficiary; rather, it allows a divorce decree to direct the payment of life insurance benefits between contending beneficiaries.

¶18    Petitioners also contend that under section 49-20-401(1)(a) of the Act, PEHP is responsible to monitor the beneficiaries. Section 49-20-401(1)(a) states, "The program shall . . . act as a self-insurer of employee benefit plans and administer those plans." But PEHP's mandate to "administer" the plan does not create a statutory duty to monitor submitted change-of-beneficiary forms for possible conflict with extraneous documents of which it may or may not be aware. If this were the rule, an insurer would not be able to "rely on the insured's designation of a beneficiary." *See Simonds v. Simonds*, 380 N.E.2d 189, 192 (N.Y. 1978). Determining the validity of a beneficiary designation is not PEHP's responsibility, and it may not have access to the information necessary to determine whether a beneficiary designation is valid. The insured is responsible to abide by any court-ordered constraints and provide PEHP with proper beneficiary designations.

¶19    Petitioners nevertheless argue that "principles of equity dictate" that they should receive the insurance proceeds because "(A) public policy concerns favor upholding an irrevocable beneficiary designation pursuant to a divorce decree, and (B) the Life Program is the only entity or person in a position to monitor beneficiary designations." PEHP counters that the equitable considerations point in the other direction because it paid Mary Ellen Lopez in good faith and because Petitioners delayed bringing their claim for six years.

¶20    Although Petitioners correctly observe that parents with child support obligations are sometimes required by court order to obtain life insurance to secure payment of those obligations, no one other than the parties to the divorce in this case—Welty and Lopez—were bound by the decree. What the Petitioners

suggest, without supporting authority, is that the divorce decree imposed duties upon PEHP even though PEHP was not a party to the divorce proceeding. It did not. A court order "bind[s] only the parties before the court." *See In re Howard*, 76 U.S. 175, 183 (1869); *Hiltsley v. Ryder*, 738 P.2d 1024, 1025 (Utah 1987) ("Courts can generally make a legally binding adjudication only between the parties actually joined in the action."). Because judicial mandates to irrevocably designate a beneficiary "involve only the [policy] owner, not the insurer, . . . [the insurer] may not be bound by the promise, or order, if the owner fails to name the appropriate beneficiary, or subsequently changes that designation." Kelvin H. Dickinson, *Divorce and Life Insurance: Post Mortem Remedies for Breach of a Duty to Maintain a Policy for a Designated Beneficiary*, 61 Mo. L. Rev. 533, 537 (1996). And, as explained above, PEHP is not in a position to monitor beneficiary designations; rather, the insured is responsible to comply with court orders in designating beneficiaries. Indeed, the decree itself required that Lopez provide annual confirmation that there was appropriate insurance in place, a provision that, in turn, gave Welty some ability to hold Lopez to account.

¶21     Accordingly, even if equitable considerations applied here, we are not persuaded that they clearly favor Petitioners.

## CONCLUSION

¶22     The Board did not err in interpreting or applying the Act, and the plain language of the contract required PEHP to pay Lopez's last named beneficiary—Mary Ellen Lopez. Having done so, PEHP's duties were discharged, and the equities of the situation do not require PEHP to pay a second time to Petitioners. We therefore decline to disturb the Board's decision.

———————