**In re the Marriage of Carl William LAUMANN, Jr., Petitioner, Respondent,**

v.

**Judith Lee LAUMANN, Appellant.**

**No. CX–86–1086.**

Court of Appeals of Minnesota.

Feb. 10, 1987.

L.D. Downing, O'Brien, Ehrick, Wolf, Deaner & Downing, Rochester, for respondent.

Jack F. Daly, Jill I. Frieders, Larkin, Hoffman, Daly & Lindgren, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER, and LESLIE, JJ.

## OPINION

PARKER, Judge.

Judith Laumann appeals from an amended dissolution judgment and decree, contending the trial court abused its discretion by failing to award her permanent maintenance, failing to secure her maintenance award with an award of life insurance, forgiving maintenance arrearages, ordering her to pay the entire marital debt, awarding her only $3,000 in attorney's fees, and failing to provide for wage withholding. Carl Laumann filed a notice of review, contending the trial court's valuation of personal property was unsupported by the evidence. We affirm in part, reverse in part, and remand.

## FACTS

The 26–year marriage of Judith Laumann, now 50, and Carl Laumann, now 57, was dissolved in March 1986. The parties have two children, now emancipated. During the marriage, Carl's career as a patent attorney with IBM required the family to relocate to four different states before they finally settled in Rochester, Minnesota. In addition to their $120,000 Rochester home (which has since been sold), they owned a lake home in Wisconsin, traveled extensively, and owned expensive hobby equipment. At the time of trial they had assets totaling over $465,000.

As a patent attorney, Carl currently makes $95,000 per year (monthly salary of $7,916.66 gross; $4,534.76 net). He has lifetime health, dental and optical insurance, as well as sick pay, seven weeks of annual paid vacation, a tax-deferred savings plan, and a pension plan with a present cash value of approximately $88,-111, assuming retirement at age 65.

Before their marriage, Judith completed two years of college and worked as a travel agent for four years. After her marriage, she quit her job to become a full-time homemaker and mother for 17 years. Nine years ago, she returned to work as a travel agent for World Travel of Rochester, where she had a net monthly income of $973.73 per month during her last year. In October 1984 she became an independent contractor with the Hobbit Travel Agency in Rochester. As an independent contractor, she is paid on a straight commission basis and has no insurance, pension plan, paid vacation, sick leave, disability plan, or other fringe benefits.

The parties separated in January 1985, but did not have a temporary hearing until the following November. In the meantime, Judith remained in the family home. Carl sent her monthly sums which gradually diminished and then ceased entirely due to a dispute over whether Judith was to continue paying all of the marital bills. On December 9, 1985, the court awarded Judith $1,500 per month in temporary maintenance and applied it retroactively, ordering Carl to pay $3,500 in arrears.

The trial was held on December 17 and 18. On March 14, 1986, the court issued its judgment, and Judith moved for amended findings or a new trial. The trial court denied the motion for a new trial and issued an amended judgment, with few changes, on June 27, 1986. In pertinent part, the court (1) ordered Carl to pay Judith $1,200 in maintenance for 16 months; (2) forgave the remaining maintenance arrearages awarded retroactively under the temporary order; (3) ordered that Judith be responsible for the remaining marital debt; (4) ordered that Carl pay $3,000 in attorney's fees to Judith; and (5) reduced its previous valuation of the silver, crystal and household furnishings awarded to Judith from $35,000 to $15,000.

## ISSUES

1. Did the trial court abuse its discretion in failing to award Judith permanent maintenance?

2. Did the trial court abuse its discretion in failing to secure the maintenance award with an award of life insurance?

3. Did the trial court abuse its discretion when it forgave the maintenance arrearages awarded retroactively under the temporary order?

4. Did the trial court abuse its discretion in ordering Judith to be responsible for the remaining marital debt of approximately $3,000?

5. Did the trial court abuse its discretion by awarding Judith only $3,000 in attorney's fees?

6. Did the trial court abuse its discretion in valuing the crystal, silver and household furnishings?

### DISCUSSION

### I

Judith Laumann contends the trial court abused its discretion in failing to award her permanent maintenance. We agree. No longer is permanent maintenance awarded only in exceptional circumstances in Minnesota. Minn.Stat. § 518.552, subd. 3 (1985), now provides:

> Nothing in this section shall be construed to favor a temporary award of maintenance over a permanent award, where the factors under subdivision 2 justify a permanent award.
>
> Where there is some uncertainty as to the necessity of a permanent award, the court shall order a permanent award leaving its order open for later modification.

*Id.* The factors to be considered in the determination as to the amount and duration of maintenance include:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting;

(c) the standard of living established during the marriage;

(d) the duration of the marriage and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) the loss of earnings, seniority, retirement benefits, and other employment opportunities foregone by the spouse seeking spousal maintenance;

(f) the age, and the physical and emotional condition of the spouse seeking maintenance;

(g) the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance; and

(h) the contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker or in furtherance of the other party's employment or business.

Minn.Stat. § 518.552, subd. 2.

■ While the trial court considered some of these factors, several of its findings were clearly erroneous. As to the parties' needs [subd. 2(a) and (g)], the court found:

> [Judith's] reasonable and necessary monthly expenses are approximately [$2,050]. * * *
>
> [Carl's] reasonable monthly needs, which include the necessity to purchase or construct a new home, are in excess of [$4,500].

This finding is clearly erroneous as to Judith's needs. It is also clearly erroneous in its implications that Judith does not have to purchase housing (the family home had been sold) and that Carl has only enough income to meet his own needs. Carl claimed monthly expenses totaling $4,940.67, including an estimated housing payment of over $3,000 consisting of vacation cabin expenses and purchase of a $150–250,000 house. Judith claimed monthly expenses totaling $3,431.04, including an estimated mortgage payment of $624 for the purchase of a townhouse in the $60–70,000 range. Although Judith's claimed expenses were modest in comparison to Carl's and went largely unchallenged, the trial court inexplicably reduced them by over 40 percent while accepting Carl's *in toto*. There is no justification for this in the record, especially in view of the fact that Carl, with a few minor exceptions, did not challenge Judith's estimate of her own expenses.

The trial court applied different standards of need to Judith and Carl, failing, in Judith's case, to consider the affluent standard of living she helped to establish during this 26–year marriage. The legislature has made clear that this is an important consideration, by repeatedly including it within the maintenance statute. In addition to being one of the subdivision 2 factors, it now appears twice in subdivision 1, which provides that a court may grant maintenance if the spouse seeking it

  (a) lacks sufficient property, including marital property apportioned to the spouse, to provide for *reasonable needs* of the spouse *considering the standard of living established during the marriage,* especially, but not limited to, a period of training or education, or

  (b) is unable to provide *adequate self-support, after considering the standard of living established during the marriage* and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodi-

an not be required to seek employment outside the home.

Minn.Stat. § 518.552, subd. 1 (1985) (emphasis added). In amending this subdivision (not otherwise at issue here), the legislature expanded the definition of "reasonable needs," as well as "adequate self-support," to include a consideration of the standard of living established during the marriage.

It is apparent from the record that the parties enjoyed an affluent lifestyle, attained over 26 years of marriage through the combined efforts of Carl and Judith. Considering the standard of living established during the marriage, Judith's estimated needs of $3,431.04 per month are not unreasonable.

As to Judith's financial resources and ability to meet her needs independently [subd. 2(a)], the trial court found:

7. She voluntarily left her prior employment to join Hobbit Travel * * * as an independent travel agent working on a straight commission basis. She transferred significant business and personal travel accounts with her. Her motivations for that move included freedom from set office hours, and the opportunity to earn substantially more income. Based upon her prior annual billings at World Travel—$500,000.00 to $600,-000.00, a 10% average agency commission rate, working the same number of hours, and her commission rate of 50%—[Judith] can reasonably expect gross earnings of $25,000.00 to $30,000.00 per year.

\*    \*    \*    \*    \*    \*

15. [Judith's] earning capacity from her present employment and investment earnings available from her equal share of the net equity from the parties' very substantial assets are more than sufficient to meet her reasonable monthly needs now and in the future.

The finding as to Judith's income is unduly speculative and contrary to the evidence. Adopted verbatim from Carl's proposed findings, it is based solely upon Carl's testi-

mony regarding a conversation he had with Judith when she embarked on her new career as an independent contractor. Carl testified that "when she left World Travel we discussed what her potential income would be and figuring on a gross of $500,000 which was not unrealistic in view of what she had been billing at World Travel and $50,000 gross commission at an average of 10 percent it would figure out to about $25,000 a year." In his proposed findings, Carl further extended this prediction to $30,000 per year. It was this finding that the trial court adopted in its totality. In light of all the variables attendant upon a new career as an independent contractor, this finding is inescapably speculative.

The only evidence Judith offered at trial was that her gross income during her last 12 months as a World Travel employee was approximately $16,000 ($973.73 net monthly). She introduced no evidence as to her current net income as an independent contractor at Hobbit, where she had been for the past year. Although her pretrial statement showed her gross monthly income to be $1,326.23, this gives no indication of her net income as an independent contractor. Judith, as an independent contractor, has no benefits provided to her and must purchase medical insurance, a disability plan and retirement benefits, thus reducing her gross income substantially, while Carl has lifetime benefits with IBM.

The trial court also included in Judith's resources her "investment earnings available from her equal share of the net equity." However, there is no evidence in the record as to the possible investment earnings that Judith could expect. Of the $236,000 in equity that Judith received, a significant portion must go to establish a retirement fund (Carl's has a present cash value of approximately $88,000), provide a down-payment on a home, and pay her attorney's fees. Considering these facts, the trial court's findings as to Judith's resources and ability to meet her needs independently are clearly erroneous.

In light of the evidence presented to the trial court, it is uncertain when Judith will be able to provide for her sole support. The evidence established that her reasonable needs, considering the standard of living established during the marriage, require $3,431.04 per month. Her income as measured by her past employment was not sufficient to provide for these needs, and her future income is speculative. Carl has the ability to help her meet her needs while providing for his own reasonable needs. We therefore remand to the trial court for an award of permanent maintenance of $1,200 per month, as found by the trial court within its discretion. We note that this award is subject to modification under the circumstances described in Minn.Stat. § 518.64 (1986) and that Carl's proposed retirement at age 65 may perhaps trigger such a motion.

■ Judith contends the trial court abused its discretion in failing to secure her maintenance award with a requirement of life insurance. The trial court has discretion to consider whether the circumstances justifying an award of maintenance also justify securing it with life insurance. In the previous action the court may have determined that it was not necessary, since it awarded only 16 months' maintenance. On remand the court should reconsider this issue.

## II

■ Judith contends the trial court abused its discretion by forgiving Carl's maintenance arrearages of approximately $3,000. Carl contends there were, in reality, no arrearages, because his payments prior to the temporary order were purely voluntary. Minn.Stat. § 518.131 (1984) gives the trial court discretion to modify a temporary order. These "arrearages" were of an ambiguous nature, having been engendered by an informal agreement between the parties and ordered only a few days before the trial. After hearing more evidence, the trial court found they were not appropriate. This was within the court's discretion.

## III

■ Judith contends the trial court abused its discretion in ordering her to pay the entire marital debt of approximately $3,000. The trial court found that the parties owed a total of nearly $3,000 to six different charge accounts; that Carl does not use the accounts; that since the time of separation Carl had given Judith adequate funds to pay the accounts in full; and that she chose not to pay them. These findings are not clearly erroneous. Especially in view of the fact that Judith received approximately $6,000 more of the liquid assets than did Carl, we find no abuse of discretion here.

## IV

■ Judith contends the trial court abused its discretion in awarding her only $3,000 in attorney's fees. This is within the trial court's discretion in view of the substantial liquid assets awarded to her. Accordingly, we affirm the trial court's award at that level.

We do, however, agree that Judith should be awarded attorney's fees for this appeal. She may submit a claim to this court by affidavit and supporting records within two weeks of the release of this opinion. Carl may have ten days thereafter to respond.

## V

■ Carl filed a notice of review and appeals the trial court's amended valuation of the crystal, silver and household furnishings at $15,000. (In the original judgment and decree, the trial court adopted Carl's proposal, valuing these items at over $35,000). He contends this reduction was arbitrary and without foundation in the evidence. The trial court's valuation need only lie within a reasonable range of figures. *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975). Judith submitted "garage sale estimates" totaling less than $10,000, while Carl based his estimate of over $35,000 on unscientifically discounted replacement costs. We cannot say that either of these methods was more reliable than the other. Under the circumstances, the trial court was acting within its discretion in reaching a figure within the outside limits of the testimony.

## VI

Finally, it has been conceded on appeal that it will be necessary to amend the judgment to provide for wage withholding in accordance with Rule 7.04 of the Family Court Rules.

## DECISION

The trial court judgment is affirmed as to its rescission of temporary maintenance arrearages, allocation of the marital debt, valuation of personal property, and attorney's fees for the trial court action. The trial court's award of temporary maintenance is reversed and remanded for entry of a permanent maintenance award, subject to later modification under Minn.Stat. § 518.64. The amended judgment shall include provision for wage withholding. On remand it will be within the trial court's discretion to secure the maintenance award with an award of life insurance, and we refer the question of Judith's reasonable attorney's fees on appeal.

Affirmed in part, reversed in part, and remanded.