**In re the Marriage of Phyllis A. MAEDER, Petitioner, Respondent,**

v.

**Edward C. MAEDER, Appellant.**

**No. C5–91–1205.**

Court of Appeals of Minnesota.

Feb. 4, 1992.

Review Denied March 19, 1992.

A. Larry Katz, Brian I. Sobol, Katz & Manka, Ltd., Minneapolis, for respondent.

Theo Wangensteen, Jr., Plymouth (Robert J. Levy, Minneapolis, of counsel), for appellant.

Considered and decided by SHORT, P.J., and SCHUMACHER and KLAPHAKE, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Edward Maeder contends that the trial court abused its discretion in granting respondent Phyllis Maeder's motion for increased and permanent spousal maintenance, by ordering the maintenance to be secured by Edward's life insurance, and by ordering Edward to pay $5,000 in attorney fees. In her notice of review, Phyllis contends that the trial court erred by only granting her $2,550 per month in maintenance, by requiring Edward to name Phyllis as a life insurance beneficiary only if a group policy is available to him, and by granting her only $5,000 in attorney fees. We affirm.

## FACTS

The 21–year marriage of appellant Edward Maeder and respondent Phyllis Maeder was dissolved on January 15, 1986. The divorce decree provided that Edward would pay Phyllis temporary maintenance of $2000 per month for 72 months. The decree also provided for Edward to designate Phyllis as a beneficiary on his life insurance policy and for him to pay Phyllis $10,283.48 in attorney fees.

On October 25, 1990, Phyllis moved to have the maintenance increased to $4,500 per month and to have it made permanent. The trial court awarded Phyllis permanent maintenance of $2,550 per month, and ordered Edward to continue to maintain life insurance to secure his maintenance obligation as long as a group policy is available to him, and to pay Phyllis $5,000 in attorney fees.

The marriage of Phyllis and Edward can be characterized as a traditional one. For almost the entire marriage Phyllis did not work outside of the home, and Edward was a practicing obstetrician/gynecologist for the entire marriage. The parties have three children.

Prior to their marriage, Phyllis attended college for two years and then worked as a flight attendant. After the parties were married, she worked as a secretary and receptionist for four years until the parties adopted their first daughter. She does not have a college degree and, at the time of the dissolution, she was found to have no vocational skills.

During their marriage, the parties lived an affluent lifestyle. They lived in a $345,-000 home in Edina. They owned two time-share units in Palm Springs, a membership at Interlachen Country Club, and memberships at athletic clubs. In addition, without Edward's consent, Phyllis spent large amounts of money on clothing, furniture, jewelry, and furs which caused the parties to be in debt. After the dissolution in 1986, Phyllis continued to spend money freely. She bought a $200,000 home, and incurred a debt of $69,698 because of various expenditures. In 1987, she declared bankruptcy. Since the dissolution, Phyllis has made some attempts to support herself but has been unsuccessful. In 1988, she earned $3,707, in 1989 she earned $555, and in 1990 she earned $3,000. Phyllis is a

recovering alcoholic and complains of migraine headaches, bleeding ulcers, and fibrocystic breast disease.

Edward is still a practicing obstetrician/gynecologist and his gross annual income for the years 1986 through 1990 was as follows:

| 1986 | $194,070 |
|------|----------|
| 1987 | 192,572 |
| 1988 | 185,495 |
| 1989 | 205,356 |
| 1990 | 208,370 |

Since the dissolution, Edward has remarried and has a child with his current spouse.

At the time of the dissolution, Phyllis was 48 years old and Edward was 46 years old. Phyllis is currently 54 years old and Edward is 53 years old.

## ISSUES

1. Did the trial court err by granting Phyllis's motion for increased and permanent spousal maintenance?

2. Did the trial court err by requiring that, as long as he could participate in a group policy, Edward should maintain life insurance to secure the maintenance obligation?

3. Did the trial court err by ordering Edward to pay $5000 in attorney fees?

## ANALYSIS

■ 1. Determination of spousal maintenance is a matter within the trial court's discretion which we will not disturb on appeal absent an abuse of that discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). "There must be a clearly erroneous conclusion that is against logic and the facts on record before this court will find that the trial court abused its discretion." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984).

■ A court may modify spousal maintenance upon a showing of substantially increased or decreased earnings of a party that makes the terms of the original decree unreasonable and unfair. Minn.Stat. § 518.64, subd. 2 (1990). Once the court finds that a modification is appropriate, it must determine the appropriate amount and duration of the award by applying the factors set out in Minn.Stat. § 518.552 subd. 2 (1990). The essential consideration in the award of maintenance is the financial need of the party receiving maintenance and his or her ability to meet that need balanced against the financial condition of the spouse providing the maintenance. *Novick v. Novick*, 366 N.W.2d 330, 334 (Minn. App.1985).

■ The trial court applied Minn.Stat. § 518.64 and found that Phyllis's need for spousal maintenance had increased because she had not been successfully rehabilitated into the job market, the cost of living had substantially increased since 1986, and she no longer had health insurance. It found that these changes made the original award unreasonable and unfair. This conclusion is not clearly erroneous or against logic and the facts of the record. "The failure of a spouse to become fully rehabilitated while receiving temporary maintenance is, in itself, a changed circumstance under [Minn.Stat. § 518.64]." *Katter v. Katter*, 457 N.W.2d 750, 753 (Minn.App. 1990). The record shows that Phyllis pursued various sales positions and self-employment positions but was only able to earn from $555 per year to $3700 per year. The trial court did not abuse its discretion in finding that a modification of the maintenance award was warranted.

After it found a change in circumstances which made the original award unreasonable and unfair, the trial court applied Minn.Stat. § 518.551 and made specific and detailed findings concerning both parties' incomes and expenses. It considered Phyllis's age, her physical and emotional condition, her contribution as a homemaker, her lack of vocational skills, the family's standard of living during the marriage, and Edward's ability to pay maintenance. The record shows that Phyllis earns a maximum of about $3700 per year and Edward earns at least $200,000 per year. It shows that Phyllis is 54 years old, has no vocational skills, and has physical and emotional problems. The record also shows that Edward has been a practicing physician since

he first married and that the parties had a high standard of living during the marriage. This evidence supports the trial court's findings. The trial court did not abuse its discretion in awarding Phyllis maintenance of $2550 per month.

■ Edward argues that respondent is not entitled to receive maintenance because she has careless spending habits and she artificially inflated the parties' standard of living during the marriage. We disagree. Although the trial court found that Phyllis spent money carelessly and artificially inflated the parties' lifestyle, we do not believe that this removes her entitlement to an income for her reasonable needs. Throughout the parties' 21–year marriage Phyllis did not work outside of the home. She performed the role of a traditional housewife while her husband conducted his medical profession. At the time of the dissolution Phyllis was found to have no vocational skills. The trial court found that Phyllis's *reasonable* expenses were $2,550 per month, and Edward has only been ordered to pay this amount.

■ In addition, we do not think the argument that Phyllis deliberately failed to rehabilitate herself and therefore is not entitled to maintenance is supported by the record. The record shows, and the trial court found, that Phyllis attempted to support herself but only earned from $555 to $3,700 per year. The record also shows that, at the time of the divorce, Phyllis was 48 years old, had no vocational skills, and had not worked outside the home for duration of the 21–year marriage. We think her age and professional background is a more plausible explanation for her failure to rehabilitate into the job market than is an allegation that she deliberately refused to rehabilitate.

■ 2. Edward also contends that the trial court abused its discretion by ordering Phyllis's maintenance to be secured by life insurance. The trial court has discretion to determine "whether the circumstances justifying an award of maintenance also justify securing it with life insurance." *Laumann v. Laumann*, 400 N.W.2d 355, 360 (Minn.App.1987), *pet. for rev. denied*,

(Minn. Nov. 24, 1987); Minn.Stat. § 518.24 (1990). Given Phyllis's weak employment prospects, her age, her education, and her vocational experience, we hold that the trial court did not abuse its discretion in ordering life insurance coverage. *O'Brien v. O'Brien*, 343 N.W.2d 850, 853 (Minn.1984).

■ 3. Finally, Edward contends that Phyllis should not have been awarded attorney fees. The decision to award attorney fees in dissolution cases rests almost entirely within the discretion of the trial court, and this court will rarely reverse the trial court on this issue. *Solon v. Solon*, 255 N.W.2d 395, 397 (Minn.1977). It is within the trial court's discretion, after considering the financial resources of the parties, to require one party to pay a reasonable amount necessary to enable the other party to carry on the proceeding. *Nardini v. Nardini*, 414 N.W.2d 184, 199 (Minn. 1987). Given the disparity in the incomes of Edward and Phyllis the trial court did not abuse its discretion by granting Phyllis $5,000 in attorney fees.

## DECISION

The trial court did not abuse its discretion by finding that a modification of Phyllis's maintenance award was necessary. The trial court did not abuse its discretion in finding that Phyllis's reasonable expenses were $2550 per month, that she was entitled to maintenance in that amount, and that the maintenance should be secured by life insurance. Finally, the trial court did not abuse its discretion by awarding Phyllis $5000 in attorney fees.

Affirmed.

SHORT, Judge (dissenting).

I respectfully dissent because respondent has failed to prove a substantial change of circumstances which renders the terms of the decree respecting maintenance unreasonable and unfair. Minn.Stat. § 518.64, subd. 2(a) (1990). In determining whether modification is warranted, the trial court must consider the deliberate behavior of the recipient spouse just as it does the paying spouse. *See Richards v. Richards*,

472 N.W.2d 162 (Minn.App.1991) (court orders continued support when spouse stopped working). The record demonstrates respondent (a) continues to live beyond her means, and (b) has failed to make genuine efforts toward rehabilitation. Under these circumstances, the trial court abused its discretion in extending the award of spousal maintenance. A substantial change of circumstances should not be founded upon respondent's decisions to expend funds she did not have.