*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1788**

In re the Marriage of:

Brenda Lee Christiansen, petitioner,
Appellant,

vs.

Timothy Nels Christiansen,
Respondent.

**Filed February 5, 2024**
**Affirmed**
**Gaïtas, Judge**

Blue Earth County District Court
File No. 07-FA-08-3847

Michelle K. Olsen, Jacob M. Birkholz, Birkholz & Associates, LLC, Mankato, Minnesota
(for appellant)

Tami L. Peterson, Saxton Peterson Law Firm, Mankato, Minnesota (for respondent)

Considered and decided by Gaïtas, Presiding Judge; Smith, Tracy M., Judge; and

Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**GAÏTAS**, Judge

Appellant-wife Brenda Lee Christiansen challenges the district court's order

granting the motion of respondent-husband Timothy Nels Christiansen for modification of

spousal maintenance and ruling on wife's related countermotion. Wife argues that the

district court failed to make adequate factual findings in its order and abused its discretion in reducing wife's permanent spousal-maintenance award, establishing the amount of husband's life-insurance obligation to wife, and denying wife's motion for need-based attorney fees. We discern no error and affirm.

## FACTS

Husband and wife were married in 1989 and divorced in 2010. The parties had five minor children at the time of their divorce, all of whom are now adults. At the time of the divorce, wife was unemployed. Husband was employed by the Mankato Clinic and had a gross monthly income of $33,551.

A judgment and decree was entered pursuant to a stipulated settlement agreement in a marital dissolution proceeding. The dissolution decree addresses spousal maintenance, child support, and life insurance, among other things. Wife was awarded permanent spousal maintenance. The parties agreed to impute $1,257 in gross income per month to wife based on the assumption that she could obtain a minimum-wage, full-time position. The decree requires husband to pay wife monthly spousal maintenance of $7,500 until her death or remarriage. Additionally, it requires husband to "maintain his term life insurance policy and his disability insurance policy in amounts sufficient to provide continued . . . spousal maintenance" and to "create an insurance trust funded from the . . . policies," "[t]o secure the future payments of child support and spousal maintenance." To enable wife or her attorney to verify "from time-to-time" that the life-insurance terms remained in effect, the decree requires husband to provide the appropriate authorizations. The decree does not identify the amount of life insurance that existed at the time of the divorce.

2

In 2012, the parties each moved the district court to hold the other in contempt for alleged violations of the terms of the dissolution decree. The district court denied the contempt motions but reminded husband of his obligation to maintain life insurance policies with wife as the beneficiary and ordered husband to provide yearly verification of the existence of life insurance.

In 2022, husband moved to terminate or decrease his spousal-maintenance obligation and to eliminate the requirement to secure the obligation with life insurance. Along with his motion, he submitted an affidavit accompanied by medical records, a letter explaining his Family Medical Leave Act (FMLA) income, an estimate of his future FMLA income, a summary of his Mankato Clinic disability benefits, and his Northwestern Mutual disability insurance policies. Husband's affidavit stated that he had been diagnosed with a terminal illness and did not anticipate working "for the remainder of [his] life." According to husband's affidavit, his income will be "significantly limited," such that he will not be able to meet his own needs and comply with the spousal maintenance obligation under the dissolution decree.

Wife filed a countermotion requesting that the district court (1) deny husband's modification motion outright or temporarily suspend or reserve maintenance, (2) find husband in contempt for failing to maintain suitable life insurance and failing to provide regular verification of life insurance, (3) compel husband's life insurance companies to pay death benefits to her in the event of husband's death, and (4) award wife conduct- and need-based attorney fees. In an affidavit filed with her countermotion, wife represented that she

3

relies entirely on spousal maintenance for support. She submitted communications between the parties and husband's insurance application along with her affidavit.

Neither party requested an evidentiary hearing on the motions. However, the parties appeared before the district court to argue the motions.

Following the hearing, the district court ruled on the parties' motions. The district court reduced husband's spousal maintenance obligation to $3,800 per month.[1] Additionally, the district court ordered husband to maintain his existing $90,000 life-insurance policy with wife as a beneficiary. The district court found husband in contempt for failing to maintain the life insurance policy in a trust and for failing to provide wife with annual verification of the policies. However, the district court stayed the order of contempt to enable husband to purge the contempt by establishing the trust and providing wife with the required verification. The district court denied wife's other contempt claims[2] and her motion for attorney fees.

Wife appeals.

## DECISION

Following a marriage dissolution, the district court may modify spousal maintenance "from time to time, on motion of either of the parties." Minn. Stat. § 518A.39, subd. 1 (2022). An appellate court reviews a district court's decision regarding whether to

---

[1] The district court modified spousal maintenance retroactively to October 1, 2022, and provided for the following spousal maintenance payments: $3,800 in October 2022; $3,800 in November 2022; $4,631 in December 2022; $4,631 in January 2023; $3,970 in February 2023; and $3,800 in March 2022 and thereafter.

[2] Wife's other contempt claims are not at issue on appeal.

4

modify an existing spousal-maintenance obligation for an abuse of discretion. *Hecker v. Hecker*, 568 N.W.2d 705, 709-10 (Minn. 1997). A district court abuses its discretion if the decision is based on an erroneous application of the law, is based on findings of fact that are unsupported by the record, or results in a resolution that is contrary to logic and the facts on record. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). Generally, an appellate court will not set a district court's finding of fact aside unless the finding is clearly erroneous. Minn. R. Civ. App. P. 52.01; *see Bissell v. Bissell*, 191 N.W.2d 425, 427 (Minn. 1971) (citing rule 52.01 in a maintenance-modification appeal). The clear-error standard of review "is a review of the record to confirm that evidence exists to support the decision." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 222 (Minn. 2021). "When the record reasonably supports the findings at issue on appeal, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary." *Id.* at 223 (quotation omitted). When applying the clear error standard of review, appellate courts (1) view the evidence in a light favorable to the findings, (2) do not reweigh the evidence, (3) do not find their own facts, and (4) do not reconcile conflicting evidence. *Id.* at 221-22. Thus,

> an appellate court need not go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the [district] court. Rather, because the factfinder has the primary responsibility of determining the fact issues and the advantage of observing the witnesses in view of all the circumstances surrounding the entire proceeding, an appellate court's duty is fully performed after it has fairly considered all the evidence and has determined that the evidence reasonably supports the decision.

*Id.* at 222 (citation and quotations omitted); *see Bayer v. Bayer*, 979 N.W.2d 507, 513 (Minn. App. 2022) (applying *Kenney* on appeal in a family case); *see generally Vangsness v. Vangsness*, 607 N.W.2d 468, 472, 474 (Minn. App. 2000) (discussing clear error standard of review).

**I. Wife shows no error in the district court's reliance on the parties' written submissions to decide husband's motion for modification of spousal maintenance.**

As a threshold issue, wife argues that the district court did not make "true findings of fact on the evidence" and instead "merely recited the evidence with no proper analysis." *Cf. Dean v. Pelton,* 437 N.W.2d 762, 764 (Minn. App. 1989) (stating that a district court's recitation of the parties' factual assertions "is not making true findings" because findings "must be affirmatively stated as findings of the trial court"); *Geske v. Marcolina*, 624 N.W.2d 813, 817, n.3 (Minn. App. 2001) (citing this aspect of *Dean*). The thrust of wife's argument is that the district court erred by accepting as true the facts presented by the parties in their written submissions. Wife urges us to remand for additional factual findings. And, at oral argument to this court, wife's attorney suggested that wife should be permitted to present additional evidence on remand. We decline wife's request to remand the matter to the district court.

Generally, the Minnesota General Rules of Practice presume that family court motions will be submitted to the district court without an evidentiary hearing and based on "affidavits, exhibits, documents subpoenaed to the hearing, memoranda, and arguments of counsel." Minn. R. Gen. P. 303.03(d)(1); *see also* Minn. R. Civ. P. 43.05 (stating that "[w]henever a motion is based on facts not appearing of record, the court may hear the

6

matter on affidavits presented by the respective parties"); *Thompson v. Thompson*, 739 N.W.2d 424, 430 (Minn. App. 2007) (noting that an evidentiary hearing is not necessary in family-law matters "unless the district court determines that there is good cause for a hearing"). A party must request an evidentiary hearing by motion. Minn. R. Gen. P. 303.03 (d)(2).

Here, wife did not request an evidentiary hearing or seek to present additional evidence during the proceedings below. Both parties submitted affidavits and documentary evidence, and the district court considered husband's modification motion and wife's countermotion based on the record before it. Although wife disagrees with some of the district court's factual findings, which we address further below, she shows no error in the district court's reliance on the record before it as a basis for its factual findings and ultimate decision on husband's motion to modify his maintenance obligation. *See Loth v. Loth*, 35 N.W.2d 542, 546 (Minn. 1949) (explaining that "error is never presumed" on appeal, that it "must be made to appear affirmatively" before a reviewing court can reverse, and that the burden of showing error rests upon the party who asserts it); *Luthen v. Luthen*, 596 N.W.2d 278, 283 (Minn. App. 1999) (citing *Loth*).

## II. The district court did not abuse its discretion in modifying husband's spousal-maintenance obligation.

Wife contends that the district court abused its discretion by reducing husband's spousal-maintenance obligation. She argues that the district court erroneously considered husband's gross income rather than his net income as a basis for its decision. And she asserts that the district court erred in its application of the statutes governing modification

7

and based its ultimate decision to reduce husband's obligation on clearly erroneous factual findings. Because the district court properly applied the law and its factual findings are supported by the record, the district court did not abuse its discretion by reducing husband's spousal-maintenance obligation.

### A.      The district court properly considered husband's gross income.

Wife first argues that, in deciding whether to modify husband's spousal-maintenance obligation, the district court erred in considering husband's gross income. According to wife, the district court should have used husband's net income to decide whether husband had shown a substantial change in circumstances warranting modification of his obligation. *See* Minn. Stat. § 518A.39, subd. 2 (2022) (stating that a movant must show a substantial change in circumstances rendering an existing award unreasonable and unfair).

This argument requires us to evaluate the district court's application of the law. "Determination of the applicable statutory standard and the interpretation of statutes are questions of law that [appellate courts] review de novo." *Goldman v. Greenwood*, 748 N.W.2d 279, 282 (Minn. 2008) (citations omitted).

In support of her argument that the district court was required to consider husband's net income when addressing whether to modify maintenance, wife cites this court's prior decisions. *See, e.g.*, *Schreifels v. Schreifels*, 450 N.W.2d 372, 373 (Minn. App. 1990) ("In order to properly consider the financial ability of a spouse, the court must determine the spouse's net or take-home income."); *Kostelnik v. Kostelnik*, 367 N.W.2d 665, 670 (Minn. App. 1985) (determining that a district court errs when using gross income). However,

those decisions predate amendments to the support statutes that require consideration of gross income. *See* Minn. Stat. §§ 518A.29 (addressing calculation of gross income), .39, subd. 2(a) (reviewing "substantially increased or decreased gross income of an obligor or obligee" when considering a modification request) (2022).[3] The statutory changes make clear that gross income is the applicable starting point that a district court must use when addressing whether to modify a maintenance obligation. Thus, the district court did not err in considering husband's gross income when addressing whether to modify maintenance.

B. **The district court properly applied the statutes governing modification of spousal maintenance, and the record supports the district court's factual findings.**

Wife argues that the district court abused its discretion in reducing husband's spousal-maintenance obligations. She contends that husband failed to satisfy the statutory standards for reducing the obligation. And she asserts that the district court clearly erred in making some of the factual findings underlying its decision to reduce husband's obligation. We discern no error.

A district court may modify a spousal-maintenance award if the moving party makes a showing of one or more statutory modification factors that make the existing maintenance award "unreasonable and unfair." Minn. Stat. § 518A.39, subd. 2(a); *Backman v. Backman*, 990 N.W.2d 478, 485 (Minn. App. 2023); *Youker v. Youker*, 661 N.W.2d 266,

---

[3] Although these statutory sections relate to the computation of child support, caselaw instructs that the definition of gross income in section 518A.29 applies to both child support and spousal maintenance. *Lee v. Lee*, 775 N.W.2d 631, 635 n.5 (Minn. 2009) (holding that the "income" from which spousal-maintenance payments are made is the "gross income" defined in section 518A.29).

269 (Minn. App. 2003) (stating that the moving party must first demonstrate "a substantial change of circumstances," and then "demonstrate that the[] changed circumstances render the original award unreasonable and unfair"), *rev. denied* (Minn. Aug. 5, 2003).

> It is presumed that there has been a substantial change in circumstances . . . and the terms of a current support order shall be rebuttably presumed to be unreasonable and unfair if . . . the gross income of an obligor or obligee has decreased by at least 20 percent through no fault or choice of the party.

Minn. Stat. § 518A.39, subd. 2(b)(5).[4]

Here, the district court cited the correct statutory provisions and, based on the evidence submitted, determined that husband's gross income decreased by over 20% through no fault of his own. The district court concluded both that the 20% reduction in husband's gross income constituted a substantial change in circumstances and that this change rendered his existing spousal-maintenance award unreasonable and unfair. Both of these rulings are consistent with the statutorily required presumptions, and wife neither rebutted the presumptions nor showed why the district court's conclusions based on those presumptions are defective.

---

[4] Wife argues that the 20% calculation in this section applies only in child-support settings and not in spousal-maintenance matters. We do not agree. The definitional section of chapter 518A states that, "For the purposes of this chapter [governing child support] and chapter 518 [governing marriages and dissolutions], the terms defined in this section shall have the meaning respectively ascribed to them." Minn. Stat. § 518A.26, subd. 1 (2022). The section then defines a "support order" to include both "the support and maintenance of a child" and "the maintenance of a spouse or former spouse." *Id.*, subd. 21(a)(1), (3) (2022). The 20% threshold applies to both child- and spousal-support orders. *Lee*, 775 N.W.2d at 635 n.5 (recognizing that the terms defined in chapter 518A likewise apply to chapter 518).

10

When the district court determines that the existing award is unreasonable or unfair, it may then modify the award, "in which case it would determine the amount and duration of the modified award by applying the same statutory factors that are relevant to an initial award of spousal maintenance, as those factors exist at the time of the [modification] motion." *Backman*, 990 N.W.2d at 485 (internal quotations omitted); Minn. Stat. §§ 518A.39, subd. 2(e) (noting that "the court shall apply, in addition to all other relevant factors, the factors for an award of maintenance under section 518.552"), 518.552 (2022). "In essence, the district court balances the recipient's needs against the obligor's ability to pay." *Maiers v. Maiers*, 775 N.W.2d 666, 668 (Minn. App. 2009). To determine the amount and duration of the modified spousal-maintenance award under the second part of this analysis, the district court considers:

> (a) the financial resources of the party seeking maintenance, including . . . [child-support payments];
> (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment . . . ;
> (c) the standard of living established during the marriage;
> (d) the duration of the marriage . . . ;
> (e) the loss of earnings, seniority, retirement benefits, and other employment opportunities forgone by the spouse seeking spousal maintenance;
> (f) the age, and the physical and emotional condition of the spouse seeking maintenance;
> (g) the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance; and
> (h) the contribution of each party [to the] value of the marital property . . . .

Minn. Stat. § 518.552, subd. 2(a)-(h).

11

Here, after determining that there was a substantial change in husband's circumstances, the district court thoroughly reviewed these eight statutory factors to determine the amount and duration of the modified award. The district court found that: (a) wife's financial resources came primarily from her spousal-maintenance award, (b) wife could find employment "with her current qualifications and receive minimum wage," (c) "[t]he parties enjoyed an upper-middle to upper-class lifestyle during the marriage," (d) wife was not in the workforce while the parties were married, (e) it was unknown whether wife "forwent any employment opportunities," (f) wife was in "reasonable physical and emotional health," (g) husband is currently only able to meet "about 62 percent of his own needs" due to his terminal illness and inability to work, and (h) husband "contributed all known financial assets" during the parties' marriage. Based on these findings, the district court determined that wife's award should be reduced to $3,800 per month.

Although wife does not directly challenge the district court's analysis of these factors, she argues that the district court's findings related to husband's income and to the parties' expenses are clearly erroneous.

### 1. Factual findings regarding husband's income.

Wife challenges the district court's findings regarding husband's gross income.[5] We review a district court's determination regarding a party's income for the purpose of establishing maintenance for clear error. *Newstrand v. Arend*, 869 N.W.2d 681, 685 (Minn.

---

[5] Wife does not challenge the district court's findings related to her income.

App. 2015), *rev. denied* (Minn. Dec. 15, 2015). "Gross income" is "any form of periodic payment to an individual, including, but not limited to, salaries, wages, [and] commissions." Minn. Stat. § 518A.29(a).

The district court observed that the dissolution decree established husband's gross monthly income in 2010 as $33,551. Relying on husband's written submissions, the district court found that husband stopped working in August 2022 due to his terminal illness. The district court found that following husband's leave from work, his income consisted of disability insurance payments. According to the district court, husband's monthly income would "fluctuate[] from October [2023] until March [2024], and then become[] consistent from March onward" as follows: $26,293 in October 2023; $25,255 in November 2023; $32,233 in December 2023; $30,618 in January 2024; $28,895 in February 2024; and $25,337 in March 2024 and thereafter.

Wife argues that the district court "did not consider all sources of income for the parties, including assets as a source of income." She contends that the district court should have considered husband's 401K and brokerage accounts that have income-producing capabilities. Wife also asserts that the district court did not properly analyze husband's disability insurance policy.

However, as noted, wife did not request an evidentiary hearing to elicit further testimony regarding husband's income. In determining husband's income, the district court relied on husband's unrebutted affidavit, crediting husband's representations regarding his income and his statements that he no longer has enough income to meet his monthly needs and that his income will continue to decline. Because the record supports

13

the district court's findings regarding husband's income, there is no clear error as to these findings. *Cf. Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003) ("On appeal, a party cannot complain about a district court's failure to rule in her favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question."), *rev. denied* (Minn. Nov. 25, 2003).

### 2. Factual findings regarding the parties' expenses.

Wife also challenges the district court's findings regarding the parties' expenses. A district court's calculation of living expenses must be supported by evidence presented by the parties. *Rask v. Rask*, 445 N.W.2d 849, 854 (Minn. App. 1989).

It is apparent that the district court relied on the parties' affidavits and other submissions to make findings regarding their respective budgets. The district court determined that husband's monthly costs were $40,414.87 based on the estimated budget that husband submitted minus husband's spousal-maintenance obligation. It also found, based on husband's affidavit, that husband had debts totaling $437,400.69. The district court found that wife's monthly expenses were $6,617, which is the figure that wife supplied in her motion papers. Because the district court's findings regarding the parties' expenses are supported by the record, they are not clearly erroneous.

Wife argues that the district court failed to assess the parties' ability to meet their own needs. She points out that the affidavit she submitted to the district court states that her monthly budget of $6,617 is "basic," that she has a lower standard of living than she did during the marriage, that she has medical bills and expects a large tax bill, and that her

14

budget does not "allow for any savings, retirement contributions or out-of-the-ordinary expenses." Wife notes that husband reported high monthly expenses related to church donations, retirement savings, and vacations and hobbies, while she does not have funds for similar activities. She criticizes the district court for failing to acknowledge her hardships while accepting husband's monthly budget "without any analysis."

We do not disagree with wife that there is a significant disparity between the budgets of the parties. However, the district court also found that "[husband's] medical care and related expenses will significantly increase his necessary expenses" and that husband's expenses exceed his income. And given these circumstances, the district court further found that by reducing husband's spousal maintenance obligation to $3,800 per month, each party would have income sufficient to meet their needs. The record supports these findings and therefore they are not clearly erroneous.

In sum, we conclude that the district court did not abuse its discretion in determining that husband successfully showed a substantial change in circumstances that made his existing spousal-maintenance obligation unreasonable and unfair and by reducing wife's award to $3,800 per month. The district court applied the correct statutory standards, and its factual findings are based on the record that the parties submitted.

III. **The district court did not abuse its discretion by establishing the amount of husband's life-insurance obligation to wife.**

Wife argues that the district court erred by "reducing" the amount of life insurance that husband must maintain to secure his spousal-maintenance obligation. She contends that husband was required to maintain "a stipulated $750,000 secured life insurance policy"

15

for her benefit. Wife asserts that the district court effectively reduced husband's life insurance obligation by requiring him to maintain his existing $90,000 policy.

A district court has discretion to secure a spousal-maintenance obligation by requiring an obligor to obtain and maintain life insurance. Minn. Stat. § 518A.71 (2022); *Kampf v. Kampf*, 732 N.W.2d 630, 635 (Minn. App. 2007), *rev. denied* (Minn. Aug. 21, 2007). An appellate court will reverse a district court's decision regarding life insurance as security for a spousal-maintenance obligation only when the district court abused its discretion. *Maeder v. Maeder*, 480 N.W.2d 677, 680 (Minn. App. 1992) (affirming district court's order to secure maintenance with life insurance because there was no abuse of discretion), *rev. denied* (Minn. Mar. 19, 1992).

Husband's motion to modify his spousal-maintenance obligation sought to terminate the requirement in the dissolution decree that he maintain life insurance for wife's benefit. The district court denied husband's request and ordered husband to "continue to maintain the existing life insurance policy of $90,000 with [wife] as a beneficiary." It also ordered husband to "modify the life insurance policy to be a trust with monthly payments to [wife] in the amount equal to the amount [she] is receiving in spousal maintenance at the time of [husband's] death."

Wife argues that she is entitled to a life insurance trust in the amount of $750,000 based on the parties' stipulated settlement agreement underlying the dissolution decree.

16

Given the parties' agreement, wife contends, the district court did not have discretion to change the required amount of life insurance.[6]

However, the decree does not support wife's contention. The judgment and decree ordered husband to

> maintain his term life insurance policy and his disability insurance policy in amounts sufficient to provide continued child support and spousal maintenance, in the ordered amounts, in the event of his death or disability. To secure the future payments of child support and spousal maintenance, [husband] agrees to create an insurance trust funded from the above-referenced policies. The terms of the trust shall provide that the minor children and [wife] are to receive monthly

[6] Because the dissolution court entered a judgment based on the parties' stipulation, we have grave doubts about the viability of a post-judgment argument that is based on the parties' *stipulation*, as opposed to the resulting *judgment* entered by the district court based on that stipulation. Specifically, in a family case, a *stipulation* is the agreement between the spouses (*before* it is adopted or rejected by the district court), while a *stipulated judgment* is the judgment that the district court enters based on that agreement. *Cf. Toughill v. Toughill*, 609 N.W.2d 634, 638 n.1 (Minn. App. 2000) (noting that "[t]he district court is a third party to dissolution proceedings and has the authority to refuse to accept the terms of a stipulation in part or *in toto*" (quotation omitted)). If a district court adopts a stipulation and enters a judgment based on that stipulation, the stipulation ceases to exist as a separate creature and is "merged" into the resulting judgment. *See Hecker v. Hecker*, 568 N.W.2d 705, 709 (Minn. 1997) (distinguishing a "stipulation" as something that "represents the parties' voluntary acquiescence in an equitable settlement" from a stipulation that "has been merged into the judgment and decree"); *see also Shirk v. Shirk*, 561 N.W.2d 519, 521-22 (Minn. 1997) (noting that stipulations are "accorded the sanctity of binding contracts" and "cannot be repudiated or withdrawn from [by] one party without the consent of the other, except by leave of the court for cause shown," but that "upon entry of a judgment and decree based on a stipulation, different circumstances arise, as the dissolution is now complete and the need for finality becomes of central importance[,]" and "[t]herefore, when a judgment and decree is entered based upon a stipulation, . . . the stipulation is merged into the judgment and decree and the stipulation cannot thereafter be the target of attack by a party seeking relief from the judgment and decree") (quotation marks omitted). As a result, to the extent the *stipulation* here was adopted by the district court, it was "merged" into the resulting *stipulated judgment* the district court based on that *stipulation*, and there is no longer a *stipulation* to construe—any construction would be of the *stipulated judgment* the district court based on that *stipulation*, not the stipulation itself.

17

payments from the trust in an amount equal to the child support and spousal maintenance obligations which would have otherwise been imposed upon [husband]. [Wife] shall be designated as trustee. At such time as there is no future obligation to pay child support or spousal maintenance, [husband] shall be entitled to name the beneficiaries of his choice or terminate the policies.

A reviewing court must give the plain and ordinary meaning to the unambiguous terms of a stipulated judgment and decree. *See Starr v. Starr*, 251 N.W.2d 341, 342 (Minn. 1977) (applying the general rule for construction of contracts to dissolution decrees). Because the decree does not establish any specific amount of necessary life insurance, the district court had discretion to consider whether husband's existing life insurance was sufficient.

Wife argues that, even if the district court had discretion to address the amount of life insurance required, the district court abused that discretion. We also reject this argument.

During the proceedings on the parties' motions, wife presented evidence to the district court that husband initially maintained a life-insurance policy of $750,000 following the dissolution, and that husband adjusted the policy in 2021 to provide $500,000 in benefits and then again in 2022 to provide $90,000 in benefits. The district court, recognizing that it had discretion to determine how much security was justified, found that husband's existing $90,000 policy was sufficient. In finding that the existing policy was sufficient, the district court observed that "[s]pousal maintenance that persists after an obligor's death is limited to the terms of the decree, and there is no requirement that the security specifically correlate to the obligee's need or the mandated maintenance award

18

that existed in obligor's lifetime." The district court noted the silence of the decree as to the specific amount of life-insurance required. It also acknowledged the uncertainty concerning when, under the decree, husband's spousal maintenance obligation would have terminated due to wife's remarriage or death. Finally, the district court stated that the existing $90,000 life-insurance policy will provide wife with spousal-maintenance payments for "almost two years" upon husband's death.

We are not persuaded that the district court's decision was an abuse of discretion. The district court correctly noted that the law does not require "security be strictly equivalent" to a spousal-maintenance obligation. *Head v. Metro. Life Ins. Co.*, 449 N.W.2d 449, 453 (Minn. App. 1989) (requiring maintenance award to be reasonable), *rev. denied* (Minn. Feb. 21, 1990). And the district court's analysis reflects that it exercised its wide discretion to establish the amount of necessary life insurance given the changed circumstances presented.

## IV. The district court did not abuse its discretion by denying wife's motion for need-based attorney fees.

Wife argues that the district court improperly denied her request for need-based attorney fees.[7] She contends that the record establishes that she lacks the means to pay attorney fees.

A district court "shall award attorney fees, costs, and disbursements in an amount necessary to enable a party to carry on or contest the proceeding" if it finds that three

---

[7] Wife does not challenge the district court's denial of her motion for conduct-based attorney fees.

19

elements are met: (1) "that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding," (2) that the party from whom fees are sought "has the means to pay them," and (3) that the party seeking fees "does not have the means to pay them." Minn. Stat. § 518.14, subd. 1 (2022).

On appeal, wife contends that she lacks the means to pay attorney fees. The district court specifically considered and rejected this argument during the proceedings below, determining that "[e]ach party is capable of paying their own attorney's fees." It found, based on wife's own assessment of her income and expenses, that she "has surplus income of $1,000 each month," which is "sufficient to cover attorney's fees." The district court further found that husband did not have any surplus income to pay wife's legal fees.

We conclude that the district court's findings regarding the parties' resources are founded in the record. Those findings support the district court's determination that wife had the means to pay her attorney fees and that husband did not have the means to pay them. Thus, we discern no error in the district court's denial of wife's request for need-based attorney fees.

**Affirmed.**